UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONSUMER PORTFOLIO SERVICES, INC., and 71270 CORP., | ) ) ) | |
| Plaintiffs, | ) ) | MISCELLANEOUS ACTION |
| v. | ) ) | CASE NO. 1:07-mc-00024-UNA |
| VIS HOLDINGS CORP., SPES INTERNATIONAL CORP., GEORGE M. SCOPETTA, and JOHN R. SCOPETTA, | ) ) ) ) | Proceeding in U.S. District Court for the Southern District of Ohio Case No. 2:04-CV-614 |
| Defendants, | ) ) | |
| v. | ) ) | |
| SEAWEST FINANCIAL CORPORATION, | ) ) | |
| Additional Counterclaim Defendant. | ) ) ) | |

**VIS DEFENDANTS' EMERGENCY MOTION FOR ORDER HOLDING SEAWEST FUNDING CORP., SEAWEST RECEIVABLES CORP. I, SEAWEST SECURITIZATION I, LLC, SEAWEST SECURITIZATION 2002-A, LLC, AND SEAWEST SECURITIZATION 2003-A, LLC IN CONTEMPT OF COURT, AND FOR SANCTIONS AGAINST SUCH PARTIES' COUNSEL: MAX W. THOMAS, ESQ., FRANCES GOINS, ESQ., AND THE LAW FIRM OF ULMER & BERNE, LLP**

Defendants, VIS HOLDINGS CORP. ("VIS"), SPES INTERNATIONAL CORP. ("SPES"),

GEORGE M. SCOPETTA, and JOHN R. SCOPETTA (VIS, SPES, George Scopetta and John

Scopetta, together the "VIS Defendants"), by and through their undersigned counsel, pursuant to

Federal Rule of Civil Procedure 45(e), move for the entry of an Order: 1) holding SeaWest Funding

Corp., SeaWest Receivables Corp. I, SeaWest Securitization I, LLC, SeaWest Securitization 2002-A,

LLC, and SeaWest Securitization 2003-A, LLC (collectively, the "SeaWest Affiliates") in contempt

of Court; 2) sanctioning the SeaWest Affiliates for their contempt of Court; 3) ordering the SeaWest

Affiliates to appear in Delaware for deposition within by no later than Friday, February 16, 2007;

CASE NO. 1:07-mc-00024-UNA

and 4) sanctioning the SeaWest Affiliates' counsel: Max W. Thomas, Esq., Frances Goins, Esq., and

the law firm of Ulmer & Berne, LLP for their outrageous conduct in breaching their agreement with

undersigned counsel for the VIS Defendants to produce and make available for deposition

representatives of the SeaWest Affiliates without resort to process issued by this Court, which

issuance proved unavoidable. As grounds for their Motion, the VIS Defendants state:

### The Ohio District Court Action

1.      The VIS Defendants are party Defendants in a civil action pending in the U.S. District

Court for the Southern District of Ohio (Eastern Division) styled *Consumer Portfolio Services, Inc.*

*and 71270 Corp., Plaintiffs vs. VIS Holdings Corp., et al, Defendants vs. SeaWest Financial*

*Corporation, Additional Counterclaim Defendant*, under Case No. 2:04-CV-614 (the "SeaWest

Case").

2.      The SeaWest Case generally relates to alleged claims arising out of VIS' sale to

SeaWest of certain motor vehicle finance retail installment contracts ("Contracts"). VIS was

formerly a licensed dealer that purchased Contracts from used car and truck retailers in the subprime

market[1], originated Contracts from its own sale of used motor vehicles, and generated revenues from

both the collection of payments due under the Contracts from account debtors and by the sale, in

bulk, of "pools" or "tranches" of Contracts to wholesale purchasers of Contracts.

3.      The VIS Defendants' claims against the Plaintiffs and SeaWest are fully detailed for

this Court in their *Renewed Counterclaims Against Plaintiff, Consumer Portfolio Services, Inc.,*

*71270 Corp., and Additional Counterclaim Defendant, SeaWest Financial Corporation* filed in the

---

[1]Subprime Contracts are characterized as being owed by persons with poor credit, thereby leading to higher than average default rates and therefore demanding higher than average interest rates be charged under the Contracts.

CASE NO. 1:07-mc-00024-UNA

SeaWest Case (D.E.# 67-1(the "Renewed Counterclaims"), a copy of which is attached hereto as Exhibit "A," and incorporated herein by this reference.

4.    In summary, VIS and SeaWest were parties to a "Purchase Program Agreement" dated April 16, 2002, pursuant to which VIS agreed to sell Contracts to SeaWest subject to the terms and conditions stated in the Agreement. Among the most important terms in the Purchase Program Agreement were the provisions that governed SeaWest's rights of "recourse" against VIS, whereby SeaWest could require VIS under ¶ 2.7 of the Purchase Program Agreement to repurchase certain Contracts that are described in such paragraph of the Purchase Program Agreement.

5.    As is alleged in paragraph 14 of their Renewed Counterclaims, "[c]rucial to the Purchase Program Agreement between VIS and SeaWest was the provision that "**[a]ny Contract sold by SeaWest pursuant to this provision** [permitting sales to third party entities other than Seller [VIS]] **will be sold without recourse to Seller [VIS] and will no longer be considered subject to this Agreement.**" *Id.* at ¶ 2.8. According to this provision, SeaWest could require VIS to repurchase Contracts under the recourse circumstances specified in the Agreement (commonly referred to as a "Buy Back"), but only up until the point in time that SeaWest sold the Contract(s) to a third party entity."

6.    In April, 2004, the Plaintiff in the SeaWest Case, CPS, purchased SeaWest using several different wholly-owned subsidiaries formed to make the acquisition- Pacific Coast Receivables Corp., and co-Plaintiff, 71270 Corp. At or about this time, at it became clear to VIS that SeaWest was "going out of business," SeaWest's President and CEO, Fred Cooper, admitted for the first time during a telephone conversation with VIS representatives, John R. Scopetta and Gus Horvath, that SeaWest had indeed breached the Purchase Program Agreement by selling Contracts

CASE NO. 1:07-mc-00024-UNA

that it purchased from VIS under the Agreement to securitizations formed by SeaWest, failing to notify VIS of such sales as was required under ¶ 2.8 of the Agreement, and then illegally requiring and causing VIS to repurchase these "Buy Backs" from SeaWest even though SeaWest's rights of recourse against VIS with respect to such Contracts had already been terminated by virtue of the sales to the third party securitizations

7.     Ultimately, SeaWest illegally required and then caused VIS to repurchase approximately $6,600,000.00 of Contracts from SeaWest under the recourse provisions of the Purchase Program Agreement, which Contracts had previously been sold to third party entities prior to VIS' repurchase of such Contracts in breach of ¶ 2.8 of the Agreement. *See* Renewed Counterclaims at ¶¶ 40-46 (alleging, *inter alia*, SeaWest's sales of Contracts purchased from VIS under the Purchase Program Agreement to SeaWest Securitization 2002-A, LLC).

### VIS discovers that SeaWest sold the Contracts it purchased from VIS even prior to its sales of such Contracts to the Securitizations

8.     During discovery in the SeaWest Case, VIS discovered evidence for the first time, that prior to SeaWest's sales of the Contracts it purchased from VIS under the Purchase Program Agreement to two of its securitizations, i.e., SeaWest Securitization 2002-A, LLC ("S2") and SeaWest Securitization 2003-A, LLC ("S3"), SeaWest had *previously* sold those same Contracts to one of two "bankruptcy remote" "special purpose entities"- SeaWest Funding Corp. ("SWF") and SeaWest Receivables Corp. I ("SWR") that were formed as wholly-owned subsidiaries of SeaWest to purchase from SeaWest Contracts which SeaWest originated or bought from dealers across the United States (including VIS), and then pledged as collateral for "warehouse" revolving lines of credit provided by PNC Bank, N.A. ($60 million) and by WestLB AG ($50 million).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.

3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

J:\DOCS\CLIENTS\5056\5056-3\00239888.WPD.

CASE NO. 1:07-mc-00024-UNA

9.      Among its evidence, VIS has uncovered opinion letters issued by two national law

firms- Squire Sanders & Dempsey, LLP and Shepard Mullin Richter & Hampton to SeaWest, SWF

and/or SWR, that SeaWest's sales of Contracts to its "SPEs"- SWF and SWR are "true sales" of

such Contracts and the mere granting of a security interest in such Contracts. VIS now possesses

virtually irrefutable evidence that every Contract that SeaWest required VIS to repurchase under the

Purchase Program Agreement had been previously sold by SeaWest to either SWF or SWR to secure

financings by PNC Bank, N.A. and WestLB AG of millions of dollars.

**The VIS Defendants have made substantial efforts to civilly and professionally
schedule a date and time for the taking of the depositions of the SeaWest Affiliates;
however, SeaWest and its counsel have continually "played games,"
broken promises to counsel, and otherwise made it unavoidable for
the VIS Defendants to subpoena the SeaWest Affiliates for deposition.**

10.      The VIS Defendants have made substantial efforts to civilly and professionally

schedule the deposition of the SeaWest Affiliates. On December 19, 2006, almost two months ago,

undersigned counsel for the VIS Defendants spoke by phone with Max W. Thomas, Esq., counsel

for SeaWest, and communicated the VIS Defendants' desire to depose "the 30(b)(6) representatives

(via Rule 45 subpoenas) of the SeaWest Affiliates. A copy of the undersigned's email evidencing

this communication is attached as Exhibit "B.

11.      On December 21, 2006, Mr. Thomas emailed a response to the undersigned's email

referenced in the preceding paragraph. Regarding the VIS Defendants desire to depose the 30(b)(6)

representatives of all the SeaWest Affiliates, Mr. Thomas stated that although neither he nor his law

firm represented the SeaWest Affiliates, he and his client would "investigate" whether they could

assist the VIS Defendants in coordinating the depositions of the SeaWest Affiliates:

CASE NO. 1:07-mc-00024-UNA

> As I indicated in the conversation, **we** [the law firm of Ulmer & Berne, LLP] **do not represent these entities [the SeaWest Affiliates]**. Nor, as I have confirmed with my client, do we control any persons who would be appropriate deponents for these entities. Any person we could present as a potential deponent would not be the person with the most knowledge of the subjects in this lawsuit. In fact, we believe that Messrs. Cooper and Terkel are to have the best information about for (sic) these entities. **Nevertheless, we will continue to investigate whether we can assist you in coordinating a deponent(s) for these entities.**

A copy of Mr. Thomas' email dated December 21, 2006 is attached as Exhibit "C" (emphasis

supplied).

12.      On January 4, 2007, the undersigned "followed up" and spoke with Mr. Thomas on

the phone regarding a number of topics related to the SeaWest Case, including the VIS Defendants'

intent to subpoena the SeaWest Affiliates for deposition. The undersigned confirmed the contents

of the conversation in an email to Mr. Thomas, which provided in relevant part that:

> You [Mr. Thomas] stated that you would confirm for us whether or not you and your firm are authorized to accept service of process relating to the VIS Defendants' intent to take the depositions of the following entities: SeaWest Securitization I, LLC, SeaWest Securitization 2002-A, LLC, SeaWest Securitization 2003-A, LLC, SeaWest Funding Corp., and SeaWest Receivables Corp. I, and if you are authorized to accept service of process, you would inquire into the availability of such entities for deposition.

A copy of the undersigned's email to Mr. Thomas evidencing this communication is attached as

Exhibit "D."

13.      On January 10, 2007, the undersigned once again "followed up" and spoke with Mr.

Thomas on the phone regarding a number of topics related to the SeaWest Case, including the VIS

Defendants' intent to subpoena the SeaWest Affiliates for deposition. The confirmed the contents

of the conversation in an email to Mr. Thomas, which provided in relevant part that:

> You [Mr. Thomas] confirmed that **you and your firm are authorized to accept service of process relating to the VIS Defendants' intent to take the depositions**

CASE NO. 1:07-mc-00024-UNA

**of the following entities: SeaWest Securitization I, LLC, SeaWest Securitization 2002-A, LLC, SeaWest Securitization 2003-A, LLC, SeaWest Funding Corp., and SeaWest Receivables Corp. I, and that you and your office would act to coordinate the scheduling of the depositions of these entities. Having said that, you clarified that you and your firm do not represent these entities, but would accept service and coordinate scheduling of their depositions for the sake of the convenience of the parties. When I inquired into available dates for the depositions of these five entities, you stated that you did not yet have any dates, but were working on getting dates, and expected to provide available dates to us within the next two weeks.**

A copy of the undersigned's email to Mr. Thomas evidencing this communication is attached as Exhibit "E" (emphasis supplied).

14.    By January 26, 2007, more than two weeks after Mr. Thomas promised the undersigned that he and his firm would provide the VIS Defendants with dates for the depositions of the five SeaWest Affiliates, Mr. Thomas and his firm failed and refused to provide available dates for the depositions of the five SeaWest Affiliates.

15.    Facing a **February 28, 2007 discovery cutoff deadline in the SeaWest Case**, on January 26, 2007, the undersigned issued five subpoenas out of this Court directed to the five SeaWest Affiliates which are all Delaware corporations or limited liability companies (collectively, the "Subpoenas"), to appear for deposition in Wilmington, Delaware **on February 7th and 8th, 2007**. Copies of the Subpoenas are attached to the SeaWest Affiliates' *Motion to Quash* and are not attached to this Motion once again.

16.    On January 29, 2007, the VIS Defendants duly served the Subpoenas on the SeaWest Affiliates' Registered Agents for service of process, which Registered Agents are all located in Wilmington, Delaware, within this District. Proofs of Service for each of the Subpoenas is attached hereto as Composite Exhibit "F," and incorporated herein by this reference.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.

3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

J:\DOCS\CLIENTS\5056\5056-3\00239888.WPD.

17.    On February 5, 2007, Mr. Thomas called the undersigned and requested the undersigned to withdraw the Subpoenas to the SeaWest Affiliates and cancel the accordant depositions because the Subpoenas were purportedly invalid as not being served on the deponents at their principal place of business. The undersigned did not agree to Mr. Thomas' request.

18.    Later that same day, the undersigned and Michael Budwick, Esq., called Mr. Thomas in an effort to resolve the dispute regarding the validity of the Subpoenas. Mr. Budwick offered on behalf of the VIS Defendants to withdraw the Subpoenas on the sole condition that the SeaWest Affiliates agree to finally perform under their previous agreement to provide the VIS Defendants with available dates, times, and places for the taking of the SeaWest Affiliates' depositions. Mr. Thomas stated to the undersigned and Mr. Budwick on that telephone call that he would "get back to us" by 4:00 p.m. that day- February 5th with available dates and places for the depositions. Mr. Thomas failed to "get back" with the undersigned and Mr. Budwick on February 5th with agreeable dates, times, and places for the taking of the SeaWest Affiliates depositions.

19.    On February 6, 2007, all five of the SeaWest Affiliates, through their counsel- Max W. Thomas, Esq. and the law firm of Ulmer & Berne, LLP, filed with this Court their *Motion to Quash Subpoenas and for Protective Order and Incorporated Memorandum of Law* (the "Motion to Quash").

20.    Later that day, February 6th, the undersigned sent Mr. Thomas an email seeking to clarify whether or not the SeaWest Affiliates would obey the Subpoenas issued by this Court and appear for deposition. Mr. Thomas sent the undersigned an email, in which Mr. Thomas, on behalf of the SeaWest Affiliates, repudiated the Subpoenas and the power of this Court to enforce them:

Jonathan: the entities to which you refer have not been duly subpoenaed to appear for

CASE NO. 1:07-mc-00024-UNA

deposition, because a Delaware court cannot compel the appearance of an entity located elsewhere. Please refer to the cases cited in our Motion to Quash. Obviously, if you have contrary authority, we will be pleased to review it.

A copy of Mr. Thomas' email dated February 6, 2007 is attached as Exhibit "G" (emphasis supplied).

### Statement of exigent circumstances

21.    The District Court in the SeaWest Case has set a **discovery cutoff deadline of February 28, 2007**. It is imperative that the VIS Defendants depose all of the SeaWest Affiliates prior to the discovery cutoff deadline in the SeaWest Case. The VIS Defendants request this Court to hear and determine this matter on an emergency basis, so as to ensure that the VIS Defendants have the ability to take depositions which may prove critical to their case at trial before discovery cutoff.

### MEMORANDUM OF LAW

## I.    The Subpoenas were duly and properly served on the SeaWest Affiliates in the District of Delaware

Federal Rule of Civil Procedure 45, which governs the enforcement of subpoenas, provides in relevant part:

> (a)(2) A subpoena must issue as follows:
>
> > (B) for attendance at a deposition, from the court for the district where the deposition is to be taken, ...
>
> (b)(2) Subject to the provisions of clause (ii) of subparagraph (c)(3)(A) of this rule, a subpoena may be served at any place within the district of the court by which it is issued, ...
>
> (c)(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

CASE NO. 1:07-mc-00024-UNA

    (i) fails to allow reasonable time for compliance;

    (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from **the place where that person resides**, is employed or regularly transacts business in person, ...

(e) **Contempt.** Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. ...

*Fed.R.Civ.Proc.* 45(b),(c),(e)(emphasis supplied).

First, it is undisputed that the Subpoenas were issued correctly out of this Court. The Subpoenas commanded each of the SeaWest Affiliates to appear for deposition at "Esquire Deposition Services, 1201 North Orange Street, One Commerce Square, Wilmington, DE 19801," a location clearly within the District of Delaware. The Subpoenas were validly issued out of this Court to command the appearance of the SeaWest Affiliates to appear for deposition in this District. *Fed.R.Civ.Proc.* 45(a)(2)(B).

Second, none of the Subpoenas issued by this Court are subject to being quashed, since all five of the SeaWest Affiliates "reside" in Delaware. *Fed.R.Civ.Proc.* 45(c)(3)(A)(ii); *American Cyanamid Co. v. Hammond Lead Products Co.*, 495 F.2d 1183, 1184 (3rd Cir. 1974)("it has long been settled that 'the **'residence' of a corporation**, within the meaning of the venue statutes, **is only in the 'State and district in which it has been incorporated'**")(emphasis supplied)(citations omitted); *Phillips Petroleum Co. v. Federal Energy Administration*, 435 F.Supp. 1234, 1237 (D.Del. 1977)(same).

In their *Motion to Quash* that was filed with this Court, the SeaWest Affiliates erroneously stated to this Court that "[f]ederal law is clear: any deposition of a corporation pursuant to Rule 45 must take place either *where the officer-witness for the corporation resides* or at the corporation's

principal place of business." *Motion to Quash* at 3 (citations omitted)(emphasis supplied). The

SeaWest Affiliates and their counsel have misrepresented the contents of Rule 45(c)(3)(A)(ii). The

Rule subjects a subpoena to being quashed if the subpoena requires a "**person** who is not a party"

"to travel to a place more than 100 miles from **the place where that person resides**, ..." Rule 45

makes no reference to "where the officer-witness for the corporation resides." The SeaWest

Affiliates misstated the contents of Rule 45 in this regard. Furthermore, the easiness with which all

of the cases cited by the SeaWest Affiliates are distinguished, and in one case actually represents bad

law, demonstrates the gamesmanship of SeaWest, the SeaWest Affiliates, and their counsel, to

obstruct and prevent the VIS Defendants from taking depositions which could prove critical for the

VIS Defendants' case at the trial of the SeaWest Case.

In *In re Johnson & Johnson*, 59 F.R.D. 174 (D.Del. 1973), the subpoenas at issue were

"**clearly directed to the individuals** (Lindbo, Sandvik, and Holtermann)," "but served on [the

corporation's] registered agent in Wilmington. *Id.* at 176-77. This Court explained that the

subpoenas issued to **individuals** were invalidly served on the registered agent of the corporation

which they happened to work for:

> **The notices of depositions are clearly directed to the individuals. They give only
> the names and addresses of the individuals with no mention of their capacity as
> officers of Jordan-Delaware. Furthermore, the subpoenas set forth the names
> of the individuals directed to appear and only parenthetically identify them as
> officers of Jordan-Delaware. The only reasonable inference to be drawn from
> the notices and the subpoenas is that they were directed to the named
> individuals, Lindbo, Sandvik, and Holtermann, and not to Jordan-Delaware.**
> Under Rule 45(c), personal service of a subpoena is required when an individual
> is subpoenaed. Here service was made on the registered agent for Jordan-Delaware in
> Wilmington. This does not fulfill the requirement for personal service on the
> individuals who also happen to be officers of Jordan-Delaware.

*Johnson & Johnson*, 59 F.R.D. at 177 (emphasis supplied).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.

3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 ● TELEPHONE (305) 358-6363

J:\DOCS\CLIENTS\5056\5056-3\00239888.WPD.

CASE NO. 1:07-mc-00024-UNA

In this case, the Subpoenas (and attached Notices of Taking Deposition) are clearly directed to the SeaWest Affiliates, corporations and limited liability companies, not to any individuals. The Subpoenas (and attached Notices of Taking Deposition) clearly invoke Rule 30(b)(6) and request each of the SeaWest Affiliates to designate "one or more officers, directors, or managing agents, or other persons who consent to testify on [their] behalf regarding the matters described on Schedule A." The "persons" subpoenaed by the VIS Defendants in the Subpoenas were the SeaWest Affiliates, not to individuals who happened to work for the SeaWest Affiliates as in *Johnson*. *Johnson* is therefore inapposite and easily distinguished.

In *Operative Plasterers' & Cement Masons' International Association of the United States and Canada AFL-CIO, et al v. Benjamin*, 144 F.R.D. 87, 88-9 (N.D.Ind. 1992), neither subpoenas nor Rule 45 were discussed by the Court. In that case, the defendant, Benjamin, *"served notices to take the oral depositions of **four individuals**, ...* and stated that the depositions were being taken pursuant to Federal Rule of Civil Procedure 26, 30(b)(6) and 32(a)(2).'" *Id*. at 88-9. The *Plasterers* Court held that the "deposition notices [were] defective," where "the deposition the deposition notices state that the depositions are being taken pursuant to Rule 30(b)(6), but they are otherwise inconsistent with the procedure described in Rule 30(b)(6). They name specific individuals as the deponents, rather than an organization; they fail to describe the subject matter of the proposed examination; and they give no indication, apart from the bare citation of Rule 30(b)(6), that the deponents were expected to testify on behalf of the [corporation]." *Id*. at 89-90.

In this case, the VIS Defendants' Subpoenas and accompanying Notices of Taking Deposition complied in all respects with Rule 30(b)(6): the Subpoenas name organizations as the deponents, specify that pursuant to Rule 30(b)(6) the deponents are required to designate one or more

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.

3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

J:\DOCS\CLIENTS\5056\5056-3\00239888.WPD.

CASE NO. 1:07-mc-00024-UNA

persons to testify on their behalf regarding a particularized description of the matters to be inquired into at the deposition set forth on Schedule A to both the Subpoenas and accompanying Notices. The VIS Defendants complied with Rule 30(b)(6) in all respects.

*Elder-Beerman Stores Corp. v. Federated Dep't Stores, Inc.*, 45 F.R.D. 515 (S.D.N.Y. 1968) addressed the issue of whether a District Court in New York had personal jurisdiction over a non-party Georgia corporation whose principal place of business was in Georgia. This case is not only distinguishable on its facts, but more importantly, represents bad law cited to this Court, since Rule 45 has been amended five times since that case has been decided. First, the subpoena in that case was served on a "minor clerical employee," instead of the deponent corporation's registered agent as was served in this case. Second, the non-party deponent in *Elder-Beerman*, Wright, was a "Georgia corporation with its principal place of business in Toccoa, Georgia." *Id.* at 516. In this case, all of the SeaWest Affiliates are *Delaware* corporations or limited liabilities companies that "reside" in Delaware under established federal law, and there is no evidence in the record, by affidavit or otherwise, where their principal place of business is located.

In *Chris-Craft Industrial Products, Inc. v. Kuraray, Ltd.*, 184 F.R.D. 605 (N.D.Ill. 1999), neither subpoenas nor Rule 45 were discussed by the Court. In *Chris-Craft*, the Court issued a protective order under Rule 26(c)(2) preventing the Plaintiff in that case from taking the depositions of eight employees of a Japanese corporate defendant that lived in Japan, referring to a "general rule that the depositions should proceed at the corporation's principal place of business," which rule, by the way, merely "create[s] a presumption that the corporation has good cause for a protective order." However, as stated previously, in the matter before this Court, Rule 45 controls the enforcement of subpoenas.

CASE NO. 1:07-mc-00024-UNA

### The SeaWest Affiliates failed to file an affidavit to meet their burden of proof that the Subpoenas issued by the VIS Defendants represent an undue burden

"The burden to prove that a subpoena is unreasonable or oppressive rests upon the party seeking to quash or modify." *Rimstat, Ltd. v. Hilliard*, 207 B.R. 964, 969 (D.D.C. 1997)(citing *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C.Cir.1984)). "Mere assertions that compliance would be burdensome are insufficient to satisfy such a burden." *Id.* (*citing* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (2d ed.1995)).

The SeaWest Affiliates failed to file any affidavits in support of their Motion to Quash averring facts, which if proven, would constitute an "undue burden," within the meaning of Rule 45(c)(3)(A)(iv). The SeaWest Affiliates' "mere assertions" that they have no employees or principal places of business in Delaware are inadequate to meet their burden of proof.

Lastly, the SeaWest Affiliates assertion that they were given inadequate notice of the depositions to adequately prepare Rule 30(b)(6) designates to testify borders on the outrageous. The Notices of Taking Deposition which are attached to the Subpoenas indicate that they were faxed to counsel for the SeaWest Affiliates a full **twelve (12) days** prior to the deposition. When considered in the context of the VIS Defendants' civil and professional efforts (as evidenced by the attached emails), since December 19, 2006, to work with their counsel[2] to agree upon available dates, times, and places for the taking of their deposition, the SeaWest Affiliates' argument is exposed for what

---

[2]The Ulmer Berne firm explicitly denied that it represented the SeaWest Affiliates right up until the time that it filed the *Motion to Quash* on their behalf with this Court.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.

3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

J:\DOCS\CLIENTS\5056\5056-3\00239888.WPD.

CASE NO. 1:07-mc-00024-UNA

it is- game playing[3] and obstruction of the VIS Defendants' right to critical discovery in the SeaWest Case.

## **Conclusion**

The VIS Defendants have made every effort to civilly and professionally work with SeaWest's counsel to schedule mutually agreeable dates for the taking of the depositions of the SeaWest Affiliates. For almost two months, Mr. Thomas and his colleague Ms. Goins, counsel for SeaWest have delayed, obfuscated, and avoided the VIS Defendants' taking of these critical depositions. After explicitly stating, in writing, that they did not represent the SeaWest Affiliates, Mr. Thomas, Ms. Goins and the Ulmer Berne firm decide to file the *Motion to Quash* at the "eleventh hour," after promising to consensually provide dates to undersigned counsel for the taking of these depositions, so as to avoid the necessity of the instant Motion. But the disingenuous conduct of Mr. Thomas, Ms. Goins and the Ulmer Berne firm left the VIS Defendants with no alternative but to subpoena the SeaWest Affiliates for deposition in their State of residence- Delaware, where this Court can and should compel them to appear for deposition by no later than February 16, 2007.

**WHEREFORE**, Defendants, VIS HOLDINGS CORP. ("VIS"), SPES INTERNATIONAL CORP. ("SPES"), GEORGE M. SCOPETTA, and JOHN R. SCOPETTA, respectfully request this Court to enter an Order 1) holding SeaWest Funding Corp., SeaWest Receivables Corp. I, SeaWest Securitization I, LLC, SeaWest Securitization 2002-A, LLC, and SeaWest Securitization 2003-A, LLC (collectively, the "SeaWest Affiliates") in contempt of Court; 2) sanctioning the SeaWest

---

[3]One of the more benign, but nevertheless indicative, examples of such "game playing," by counsel for SeaWest and now the SeaWest Affiliates is their argument that "Rule 45(a)(3) (sic) requires that proof of service 'shall be made by filing with the clerk of courts ....'" Mr. Thomas conveniently omitted the words "when necessary" before the word "shall" in Rule 45(b)(3), and in this case, no such filing was necessary. Such omission borders on a lack of candor to this Court, and cannot be explained away solely as advocacy.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.

3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

J:\DOCS\CLIENTS\5056\5056-3\00239888.WPD.

CASE NO. 1:07-mc-00024-UNA

Affiliates for their contempt of Court; 3) ordering the SeaWest Affiliates to appear in Delaware for

deposition within by no later than Friday, February 16, 2007; and 4) sanctioning the SeaWest

Affiliates' counsel: Max W. Thomas, Esq., Frances Goins, Esq., and the law firm of Ulmer & Berne,

LLP, and 5) granting the VIS Defendants such other and further relief as this Court deems just and

proper.

Respectfully submitted,

Michael S. Budwick  (Fla. Bar No. 938777)
Jonathan K. Winer    (Fla. Bar No. 909970)
MELAND RUSSIN & BUDWICK, P.A.
3000 Wachovia Financial Center
200 S. Biscayne Blvd.
Miami, FL 33131
Phone: 305-358-6363
Fax: 305-358-1221

Thomas W. Hill         (0012182)
Jennifer L. Mackanos   (0075059)
KEGLER, BROWN, HILL & RITTER,
A Legal Professional Association
65 E. State Street, Suite 1800
Columbus, Ohio 43215
Phone: 614-462-5403
Fax: 614-464-2634

Attorneys for VIS Defendants

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.

3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

J:\DOCS\CLIENTS\5056\5056-3\00239888.WPD.

CASE NO. 1:07-mc-00024-UNA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email pdf

and U.S. Mail this 8th day of February, 2007 upon the following parties:.

Thomas W. Hill, Esquire
Jennifer L. Mackanos, Esquire
Kegler, Brown, Hill & Ritter,
a Legal Professional Association
65 E. State Street, Suite 1800
Columbus, Ohio 43215

Thomas A. Roberts, Esquire
Anthony Rollo, Esquire
McGlinchey Stafford, PLLC
643 Magazine Street
New Orleans, Louisiana 70130

Frances Floriano Goins, Esquire
Max W. Thomas, Esquire
Ulmer & Berne LLP
1660 West 2nd Street, Suite 1100
Cleveland, OH 44113

James S. Wertheim, Esquire
McGlinchey Stafford, PLLC
25550 Chagrin Blvd., Suite 406
Cleveland, Ohio 44122-4640

John J. Giovannone, Esq.
Greenberg Traurig LLP
650 Town Center Drive, Suite 1700
Costa Mesa, CA 92626

Gary Freedman, Esq.
Tabas, Freedman, Soloff & Miller, P.A.
25 S.E. 2nd Street, 9th Floor
Miami, FL 33131

By: _____
        Jonathan K. Winer

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.

3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

J:\DOCS\CLIENTS\5056\5056-3\00239888.WPD.

# EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CONSUMER PORTFOLIO SERVICES, INC., and 71270 CORP., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:04-CV-614 |
| v. | ) ) | Judge Marbley |
| VIS HOLDINGS CORP., SPES INTERNATIONAL CORP., GEORGE M. SCOPETTA, and JOHN R. SCOPETTA, | ) ) ) ) ) | Magistrate Judge King |
| Defendants, | ) ) | |
| v. | ) ) | |
| SEAWEST FINANCIAL CORPORATION, | ) ) | |
| Additional Counterclaim Defendant. | ) ) ) | |

**DEFENDANTS' RENEWED COUNTERCLAIMS AGAINST PLAINTIFF, CONSUMER PORTFOLIO SERVICES, INC., 71270 CORP., AND ADDITIONAL COUNTERCLAIM DEFENDANT, SEAWEST FINANCIAL CORPORATION**

Defendants, VIS Holdings Corp., a Florida corporation ("VIS"), SPES International Corp., a Florida corporation ("SPES"), George M. Scopetta, a citizen and domiciliary of the State of Florida, and John R.. Scopetta, a citizen and domiciliary of the State of Florida (collectively referred to as "Defendants"), by and through their undersigned counsel, counterclaim against Plaintiffs, Consumer Portfolio Services, Inc. ("CPS"), 71270 Corp. ("71270"), and Additional Counterclaim Defendant, SeaWest Financial Corporation ("SeaWest"), and state as follows:

**The Parties**

1.      VIS is a Florida corporation with its principal place of business in Florida.

2.    SPES is a Florida corporation with its principal place of business in Florida.

3.    George M. Scopetta, is a citizen and domiciliary of the State of Florida.

4.    John R. Scopetta, is a citizen and domiciliary of the State of Florida.

5.    CPS is a California corporation with its principal place of business in California.

6.    71270 is a California corporation with its principal place of business in California.  71270 is a wholly-owned subsidiary of CPS.

## Jurisdiction and Venue

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

8.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim arose in this judicial district in that, the agreements at issues were executed, delivered, accepted, and made by the parties in this district.  Additionally, the parties have stipulated and agreed in writing that venue in any proceedings arising out of or involving the agreements shall lie exclusively with this judicial district.

## Factual Allegations

9.    VIS is a motor vehicle finance company that is in the business of, among other things, purchasing motor vehicle finance retail installment contracts ("Contracts") from motor vehicle retail sales dealers who would originate the Contracts from retail

2

buyers of motor vehicles. VIS would then include Contracts it purchased into its portfolio of Contracts. VIS serviced the Contracts in its portfolio, collecting the loans from the respective account debtors. VIS generated revenue from the interest it earned from the Contracts. VIS also sold Contracts, or tranches of Contracts, to third parties such as SeaWest and thereby generated profits for the company measured by the "spread" between the price that VIS paid for the Contracts and the price for which VIS sold the Contracts.

10.    At all times material, CPS's predecessor-in-interest, SeaWest Financial Corp. ("SeaWest"), was in the business of purchasing and/or discounting Contracts and other negotiable paper for profit.

11.    Over a period of approximately five to six years, VIS and SeaWest entered into a series of agreements, pursuant to which SeaWest purchased approximately $30 million in Contracts from VIS.

**The Purchase Program Agreement Between VIS and SeaWest**

12.    On April 16, 2002, VIS and SeaWest entered into that certain Automobile Installment Contract Purchase Program Agreement ("Purchase Program Agreement"), a copy of which is attached as Exhibit "A" and incorporated herein by this reference.

13.    The Purchase Program Agreement provided the following relevant terms:

a.    SeaWest would pay VIS 90% of the outstanding net principal balance of the Contract(s) that SeaWest purchased from VIS. *See id.* at ¶ 2.2, 2.4.

b.    SeaWest would credit an unfunded separate Loss Reserve for each Contract that it purchased from VIS equal to 10% outstanding net principal

3

balance of such Contract as of its Submission Date. *See id.* at ¶ 2.3

    c.    VIS would participate in SeaWest's ongoing profits on the Contracts that SeaWest purchased from VIS. Each month, SeaWest would pay VIS funds equal to amount by which the Loss Reserve exceeded 10% of the net outstanding balance of the Contracts that SeaWest purchased fromVIS. *See id.* at ¶ 2.5. According to this provision, as the net principal balance on the Contracts purchased from VIS was paid down, VIS would be paid an amount equal to the amount paid down.

    d.    SeaWest could require VIS to repurchase Contracts in certain circumstances specified in the Agreement. *See id.* at ¶ 2.7

    e.    SeaWest could, at any time and at its sole discretion, sell the Contracts to any third party entity, subject to VIS' right of first refusal. *See id.* at 2.8.

    f.    If SeaWest sold Contracts purchased from VIS to a third party entity, either at a discount or a premium, then the amount of the discount or premium, plus 10% of the net principal balance at that time, would be subtracted from the Loss Reserve. *See id.* The effect of this provision was to reduce the Loss Reserve, so that VIS would be entitled to its profit participation upon any sale by SeaWest of Contracts that it purchased from VIS.

    14.    Crucial to the Purchase Program Agreement between VIS and SeaWest was the provision that "**[a]ny Contract sold by SeaWest pursuant to this provision** [permitting sales to third party entities other than Seller [VIS] **will be sold without**

4

recourse to Seller [VIS] and will no longer be considered subject to this

Agreement." *Id.* at ¶ 2.8. According to this provision, SeaWest could require VIS to

repurchase Contracts under the recourse circumstances specified in the Agreement

(commonly termed a "Buy Back"), but only up until the point in time that SeaWest sold

the Contract(s) to a third party entity.

15.    The agreed-upon contractual provision that VIS could only be required to

buy back Contracts until SeaWest sold the Contracts to a third party entity was a

negotiated and essential term between VIS and SeaWest under the Purchase Program

Agreement.

16.    Two principals of VIS, John R. Scopetta and George M. Scopetta,

guaranteed VIS' performance under the Purchase Program Agreement.    But their

inducement to sign the guarantees to SeaWest was based in material part upon the

provision in the Purchase Program Agreement which terminated SeaWest's right of

recourse to VIS upon SeaWest's sale of a Contract(s) to a third party entity.

**The Initial Relationship Between VIS and SeaWest**

17.    As a practical matter, under the terms of the Purchase Program

Agreement, VIS purchased Contracts from its network of retail motor vehicle dealers

and included these Contracts into its portfolio of Contracts, which SeaWest would then

evaluate, and then purchase from VIS in pools or groups at a time.

18.    Approximately each month, SeaWest would purchase and VIS would sell

the pools of Contracts at a price equal to 90% of the net principal balance outstanding

on the Contracts as of the Submission Date pursuant to section 2.2 of the Purchase

Program Agreement.    Thus, VIS retained a 10% equity participation or "kicker"regarding

all Contracts that it sold to SeaWest under the Purchase Program Agreement.

19.    After purchasing Contracts from VIS, SeaWest would track the performance of such Contracts in terms of payment by the account debtor.

20.    SeaWest would intermittently notify VIS with requests/demands for VIS to repurchase Contracts pursuant to § 2.7 of the Purchase Program Agreement.    VIS would then review the purported reason given by SeaWest for the requested Buy Backs, and if appropriate, VIS would repurchase the Contracts listed by SeaWest pursuant to section 2.7 of the Purchase Program Agreement.    Ultimately, VIS repurchased from SeaWest approximately $6,600,000 of Contracts pursuant to such provision of the Purchase Program Agreement.

21.    Every month, as SeaWest collected payments from the Contracts that it purchased from VIS, SeaWest would pay VIS the portion of VIS' 10% profit participation from the Contracts, pursuant to section 2.5 of the Purchase Program Agreement, entitled "Seller Participation/Loss Reserve".

### VIS and SeaWest: Selling and Purchasing Subprime Contracts

22.    The terms and application of the Purchase Program Agreement resulted, in great part, from the fact that VIS and SeaWest intended to purchase and sell "subprime" Contracts under this Agreement. Subprime Contracts are those in which the individual financing the purchase of a motor vehicle has poor credit, and is therefore categorized as a less than prime candidate for a retail installment contract. Subprime Contracts exhibit two relevant characteristics:  (a) generally they are subject to very high default rates; and (b)  performing Contracts generate high rates of return because the of premium interest rate charged to offset the very high default rate.

6

23.    SeaWest and VIS both had a financial incentive to ensure' that the Contracts which SeaWest purchased from VIS exhibited a very low default rate. VIS' incentive was based on the fact that, according to the terms of the Purchase Program Agreement, it was entitled to an additional 10% equity participation or "kicker" as the Contracts were paid down by the customers. Only performing Contracts could generate this profit participation in which VIS could share and defaulted Contracts would negatively impact the financial performance of the VIS-purchased Contracts. SeaWest's financial incentive was based on the fact that the better the performance of the Contracts that it purchased from VIS, the higher the sale price SeaWest could realize for those Contracts upon a sale of Contracts to a third party entity.

24.    To protect their respective investment in the pools of Contracts, VIS and SeaWest, pursuant to the Purchase Program Agreement, endeavored to minimalize the default rate on the Contracts that SeaWest purchased from VIS, thereby realizing the interest payments on such Contracts without the corresponding defaults associated with subprime lending.

25.    To ensure the highest possible performance of the portfolio of Contracts that SeaWest    purchased from VIS, SeaWest would require VIS to repurchase Contracts based purportedly on the conditions specified in the "Mandatory Contract Repurchase" provision set forth in § 2.7 of the Agreement; VIS would repurchase the Contracts from SeaWest and refund Seawest the purchase price for those Contracts, and SeaWest would then use those funds to create an accounting entry on its books and records indicating that the Contracts were paid.

26.    As a result of VIS's substantial repurchases of Contracts from SeaWest,

7

the Contracts which SeaWest had purchased from VIS had a superb financial record because (the remaining Contracts) generated the high interest payments associated with subprime finance retail installment contracts, but with almost no defaults.

### The Relationship between VIS and SeaWest Expands and Continues

27.    Although the Purchase Program Agreement originally limited the scope of the parties' agreement to the sale and purchase of $4,000,000 of Contracts, the parties amended, modified and/or extended the Purchase Program Agreement "facility" on multiple occasions so that VIS ultimately sold SeaWest approximately $20,000,000 of Contracts pursuant to the Purchase Program Agreement.

28.    In order to generate the volume of Contracts that SeaWest wanted to purchase, VIS would purchase motor vehicle finance retail installment contracts each month from automobile dealers, with the understanding that SeaWest would purchase those Contracts.  Thus, each month, VIS would use its lines of credit at Ocean Bank, N.A. ("Ocean Bank") in Florida to purchase hundreds of thousands of dollars in Contracts for resale to SeaWest.  Upon periodically selling the Contracts to SeaWest, VIS would use the sales proceeds to pay down its line of credit at Ocean Bank and use the available credit facility to purchase more motor vehicle finance retail installment contracts to sell to SeaWest.

29.    SeaWest, through its President, Fred Cooper, and Vice President, Ken Turkel, was aware of VIS's means of operation.  Turkel had visited VIS' offices and was in personal and frequent contact with VIS' Chief Financial Officer, Gus Horvath. SeaWest knew that VIS was purchasing numerous motor vehicle finance retail installment contracts from its network of retail dealers for the benefit of SeaWest.

8

SeaWest also knew that if it did not purchase the Contracts, VIS would be damaged because VIS would be left owning hundreds of thousands of dollars in Contracts without any purchaser while still having to pay the substantial interest expense owed to Ocean Bank on its lines of credit.

30.     As a result of VIS entering into the Purchase Program Agreement, it had become dependent on SeaWest fulfilling its contractual obligations to purchase Contracts from VIS, so that any breach by SeaWest of its commitments would materially damage VIS.

31.     Throughout the course of operation under the Purchase Program Agreement, SeaWest would continue to submit repurchases to VIS, which VIS would buy back pursuant to section 2.7.  Upon repurchasing a Contract from SeaWest, VIS would typically attempt to repossess the motor vehicle securing the Contract, and if the vehicle could be located, then recondition and resell the vehicle thereby generating a new Contract.  VIS lost money when it was required to repurchase Contracts from SeaWest because the vehicles securing the Contracts would have to be sold for less than the amount of the Contract and VIS would incur expenses in reselling the vehicle, if the vehicle could be located and repossessed.  If the motor vehicle securing the Contract could not be located, a Contract repurchase from SeaWest was a total loss to VIS.

32.     SeaWest, through its President, Fred Cooper, and Vice President, Ken Turkel, was aware that each time it required VIS to repurchase a Contract, VIS would incur a loss.

**The Relationship Between VIS and SeaWest Changes**

33.    At some point in time, SeaWest ceased to purchase Contracts pursuant to the Purchase Program Agreement and instituted a new phase in the relationship between VIS and SeaWest.

34.    SeaWest's demands for VIS to repurchase Buy Backs mounted.    It reached a point where it was financially impossible for VIS to repurchase any more Buy Backs from SeaWest because its working capital and lines of credit at Ocean Bank were beginning to get exhausted.    SeaWest knew that VIS was financially unable to continue repurchasing Buy Backs from SeaWest at the rate of SeaWest's increasing requests under the Purchase Program Agreement.    In effect, VIS needed the revenue from sales of Contracts to SeaWest, in order to have sufficient funds to repurchase Contracts from SeaWest on demand.

35.    SeaWest proposed that if VIS would continue to repurchase Contracts under § 2.7 of the Purchase Program Agreement, SeaWest would periodically purchase Contracts from VIS.    SeaWest explained that it would directly link its new purchases of Contracts to the amount of Contract repurchases it would require of VIS:    SeaWest would purchase an amount of Contracts equal to the sum of the Contracts it sought to VIS to repurchase and some additional amount of Contracts from which VIS could derive a profit.

36.    Pursuant to this new arrangement, which was verbal, VIS acquired more Contracts that SeaWest purchased and by which VIS repurchased even more Contracts pursuant to the Purchase Program Agreement.

37.    Ultimately, VIS repurchased approximately $6,600,000 of Contracts from

10

SeaWest, pursuant to section 2.7 of the Purchase Program Agreement.

### VIS Discovers that SeaWest has Breached the Purchase Program Agreement

38.    Throughout the course of its relationship with SeaWest under the
Purchase Program Agreement, VIS expected that SeaWest would sell some of the
Contracts that it purchased from VIS to other third party entities. SeaWest's sale of
Contracts that it purchased from VIS to third party entities would benefit VIS in two
ways:

     a.    Once a sale of Contracts was effected by Seawest,
SeaWest's right of recourse to VIS terminated under § 2.8 of the
Agreement. VIS would no longer be required to repurchase Contracts
because section 2.8 of the Purchase Program Agreement provided that
"**[a]ny Contract sold by SeaWest pursuant to this provision** [permitting
sales to third party entities other than VIS] **will be sold without recourse
to Seller [VIS] and will no longer be considered subject to this
Agreement.**"

     b.    VIS would be entitled to its 10% profit participation on the
sold Contracts pursuant to section 2.5 of the Purchase Program
Agreement.

39.    Pursuant to § 2.8 of the Purchase Program Agreement SeaWest had an
affirmative duty to notify VIS if it intended to sell Contracts that it purchased from VIS to
a third party entity. Such notice was required by SeaWest for several contractual
reasons. First, notice was required to invoke VIS' right of first refusal to repurchase

11

Contracts. Second, notice was required to advise VIS that it was entitled to its 10% profit participation on such Contracts. Third, and most critically, notice was required to advise VIS that SeaWest's right of recourse to VIS, i.e. SeaWest's right to require VIS to repurchase "impaired" Contracts had terminated.

40.    Throughout 2003, Ken Turkel, Vice President of SeaWest, continually and unequivocally represented to George M. Scopetta and John R. Scopetta, officers of VIS, that SeaWest had not sold Contracts that it had purchased from VIS under the Purchase Program Agreement to third party entities.

41.    In March 2004, VIS first learned for the first time that SeaWest had sold Contracts that it had purchased from VIS under the Purchase Program Agreement to third party entitites through a series of securitizations, beginning, upon information and belief, in 2002.

42.    VIS learned that SeaWest had entered into three securitizations in which SeaWest sold Contracts that it had purchased from VIS under the Purchase Program Agreement to third party entities but continued to require VIS to repurchase "impaired" Contracts in direct breach of the section 2.8 of the Purchase Program Agreement, which had terminated VIS' repurchase obligations upon SeaWest's sale of such Contracts to any third party entity.

43.    While SeaWest has refused to provide VIS with any information regarding these sales of Contracts, VIS has obtained one of the offering memoranda regarding the securitization of  Contracts that SeaWest had purchased from VIS under the Purchase Program Agreement, which plainly shows that SeaWest sold the Contracts. *See* Offering Memorandum of SeaWest Securitization 2002-A, LLC, dated December

18, 2002 (the "SeaWest Offering Memorandum") attached as Exhibit "B".    Upon information and belief, all of the relevant securitizations are materially identical.

44.    In the SeaWest Offering Memorandum, SeaWest represented to the investing public that:

  a.    SeaWest and its wholly-owned subsidiary, formed and are the only members of SeaWest Securitization 2002-A, LLC, a Delaware special-purpose limited liability corporation. *Id.* at p. 1, at section entitled "Summary";

  b.    SeaWest is the "Seller", *id.* at section entitled "Seller";

  c.    SeaWest, as seller, would **sell and assign all of its right, title, and interest in the Contracts** (defined as "Receivables") to the Issuer,  SeaWest Securitization 2002-A, LLC, *id.* at p.3, at section entitled "Receivables" (emphasis added)

  d.    "On the Closing Date, the Receivables [including Contracts originated by VIS] **will be sold** and assigned by Seller [SeaWest] to the Issuer [SeaWest Securitization 2002-A, LLC], *id.* at p. 20 (emphasis added)

  e.    "The Seller [SeaWest] intends that the transfers of Receivables [including the Contracts originated by VIS] to the Issuer [SeaWest Securitization 2002-A, LLC] under the Sales and Servicing Agreement, **will constitute sales,** rather than pledges of the Receivables . . . ." *Id.* at p. 18 at first full paragraph (emphasis added);

  f.    Moreover, counsel has advised SeaWest Securitization

13

2002-A, LLC that the transfer of the Contracts would be **held by a Court to constitute a sale** or contribution, *id.* at second full paragraph. (emphasis added)

45.    In fact, the SeaWest Offering Memorandum admits that it cannot require VIS to repurchase Contracts. It states:

> The sales by Dealers and Other Companies [including VIS] of Receivables to SeaWest **do not provide recourse against the Dealers** for unpaid amounts in the event of a default by an Obligor thereunder, other than in connection with the breach of the foregoing representations and warranties and in limited circumstances with respect to up to the first three payments.

*Id.* at p. 20, at last full paragraph. (emphasis added)

46.    Despite SeaWest's own admissions that it had sold the Contracts and that is did not have recourse against VIS, SeaWest misled VIS and misrepresented to VIS that it continued to own the Contracts that it had purchased from VIS under the Purchase Program Agreement and required VIS to repurchase "impaired" Contracts for the sum of approximately $6,600,000.

47.    A material part of SeaWest's deception was to cheat VIS out of its 10% profit participation, which was to be realized upon SeaWest's sale of the Contracts to any third party entity. SeaWest did not pay VIS, account for, or otherwise advise VIS in any way regarding VIS's 10% profit participation upon the sale of the Contracts to a third party entity, as required by sections 2.5 and 2.8 of the Purchase Program Agreement. In addition, SeaWest materially altered the structure of the Contracts that it had purchased from VIS under the Purchase Program Agreement so the principal would be reduced more slowly, thereby depriving VIS of its profit participation, which was a

14

function of the Contracts' net principal balance.

48.    SeaWest, through its officers, Fred Cooper and Ken Turkel, continued this pattern of deceit in order to obscure SeaWest's breaches of the Purchase Program Agreement and unlawfully profit from its breaches.

### CPS and 71270 Corp. Acquire the Contracts as SeaWest's Successor-In-Interest

49.    Upon information and belief, on April 2, 2004, SeaWest and its subsidiaries sold all of their assets, including the Contracts that SeaWest had purchased from VIS under the Purchase Program Agreement, to Plaintiff, Consumer Portfolio Services, Inc. ("CPS") and CPS's wholly-owned subsidiary, Plaintiff, 71270 Corp. for $63,200,000.00.  Also, CPS became the successor servicer of the Contracts that SeaWest had purchased from VIS under the Purchase Program Agreement contained in SeaWest's three securitizations.

50.    Even though SeaWest clearly sold the Contracts that it had purchased from VIS under the Purchase Program Agreement a second time (to CPS and/or 71270), SeaWest failed to pay VIS its 10% profit participation upon the sale of such Contracts, as required by sections 2.5 and 2.8 of the Purchase Program Agreement.

51.    CPS and 71270, as SeaWest's successors-in-interest, have demanded that VIS repurchase over $2,200,000 in "impaired" Contracts pursuant to section 2.7 of the Purchase Program Agreement.

52.    Pursuant to the Purchase Program Agreement, VIS is not, and has not been, obligated to repurchase any of the Contracts that SeaWest had purchased from VIS under the Purchase Program Agreement once SeaWest sold those Contracts to any third party entity.  In fact, some of the Contracts that SeaWest had purchased from

VIS under the Purchase Program Agreement have been sold not only once, but twice (first to a Securitization LLP and then to CPS and/or 71270).

### COUNT I
### DECLARATORY ACTION AGAINST SEAWEST

53.   Counterclaim Plaintiffs, VIS, SPES, George M. Scopetta, and John R. Scopetta, reallege paragraphs 1 through 52, as if fully restated herein.

54.   This is an action for declaratory relief pursuant Fed.R.Civ.P. 57 and 28 U.S.C. §2201.

55.   An actual controversy exists between the Plaintiffs and SeaWest, arising from an interpretation of the rights and obligations of the parties under the Purchase Program Agreement.

56.   Counterclaim Plaintiffs seek a declaration relating to the rights and obligations pursuant to the Purchase Program Agreement, including, but not limited to, the following determinations of whether:

      a.   The Contracts which Seawest purchased from VIS pursuant to the Purchase Program Agreement have been sold by SeaWest, as defined in that Agreement, by virtue of the sale of such Contracts as a necessary part of those certain securitizations;

      b.   The Contracts which Seawest purchased from VIS pursuant to the Purchase Program Agreement have been sold, as defined in that Agreement, by virtue of SeaWest's sale of assets to CPS and 71270 Corp.;

      c.   SeaWest unlawfully required VIS to repurchase Contracts that it had purchased from VIS under the Purchase Program Agreement  after

16

such Contracts had been sold, in breach of the Purchase Program Agreement;

d.    VIS was entitled to a 10% profit participation upon SeaWest selling the Contracts that SeaWest had purchased from VIS under the Purchase Program Agreement as a necessary part of those certain securitizations;

e.    VIS was entitled to a profit participation upon SeaWest selling the Contracts that SeaWest had purchased from VIS under the Purchase Program Agreement to CPS and 71270 Corp.;

f.    VIS is not in default of the Purchase Program Agreement;

g.    SPES is not a party to, or liable under, the Purchase Program Agreement;

h.    George M. Scopetta and John R. Scopetta are not liable under the "Unconditional Guaranty Agreements" of the Purchase Program Agreement;

i.    George M. Scopetta and John R. Scopetta are released from the Unconditional Guaranty Agreements of the Purchase Program Agreement by virtue of SeaWest's sale of the Contracts that SeaWest had purchased from VIS under the Purchase Program Agreement as part of those certain securitizations; and

j.    George M. Scopetta and John R. Scopetta are released from the Unconditional Guaranty Agreements of the Purchase Program Agreement by virtue of SeaWest's sale of the Contracts that SeaWest had purchased from VIS under the Purchase Program Agreement as part of those certain

securitizations.

WHEREFORE, Counterclaim Plaintiffs, VIS Holdings Corp., SPES International Corp., George M. Scopetta, and John R. Scopetta demand a declaration of their rights and obligations with respect to SeaWest Financial Corp. under the Purchase Program Agreement and any other relief this Court deems just.

## COUNT II
## DECLARATORY ACTION AGAINST CPS AND 71270

57.    Counterclaim Plaintiffs, VIS, SPES, George M. Scopetta, and John R. Scopetta, reallege paragraphs 1 through 56, as if fully restated herein.

58.    This is an action for declaratory relief pursuant Fed.R.Civ.P. 57 and 28 U.S.C. §2201.

59.    An actual controversy exists between the Plaintiffs and CPS and its wholly-owned subsidiary, 71270, arising from an interpretation of the rights and obligations of the parties under the Purchase Program Agreement.

60.    Counterclaim Plaintiffs seek a declaration relating to the rights and obligations pursuant to the Purchase Program Agreement, including, but not limited to, the following determinations of whether:

    a.    CPS and 71270 are successors-in-interest to SeaWest's rights and obligations under the Purchase Program Agreement, including for purposes of liability for SeaWest's breaches of the Purchase Program Agreement, misrepresentations, and omissions;

    b.    The Contracts which Seawest purchased from VIS pursuant to the Purchase Program Agreement have been sold by SeaWest, as defined in

18

that Agreement, by virtue of the sale of such Contracts as a necessary part of those certain securitizations;

c.    The Contracts which Seawest purchased from VIS pursuant to the Purchase Program Agreement have been sold, as defined in that Agreement, by virtue of SeaWest's sale of assets to CPS and 71270 Corp.;

d.    SeaWest unlawfully required VIS to repurchase Contracts that it had purchased from VIS under the Purchase Program Agreement after such Contracts had been sold, in breach of the Purchase Program Agreement;

e.    VIS was entitled to a 10% profit participation upon SeaWest selling the Contracts that SeaWest had purchased from VIS under the Purchase Program Agreement as a necessary part of those certain securitizations;

f.    VIS was entitled to a profit participation upon SeaWest selling the Contracts  that SeaWest had purchased from VIS under the Purchase Program Agreement to CPS and 71270 Corp.;

g.    VIS is not in default of the Purchase Program Agreement;

h.    SPES is not a party to, or liable under, the Purchase Program Agreement;

i.    George M. Scopetta and John R. Scopetta are not liable under the "Unconditional Guaranty Agreements" of the Purchase Program Agreement;

j.    George M. Scopetta and John R. Scopetta are released from the

19

Unconditional Guaranty Agreements of the Purchase Program Agreement by virtue of SeaWest's sale of the Contracts that SeaWest had purchased from VIS under the Purchase Program Agreement as part of those certain securitizations; and

k.    George M. Scopetta and John R. Scopetta are released from the Unconditional Guaranty Agreements of the Purchase Program Agreement by virtue of SeaWest's sale of the Contracts that SeaWest had purchased from VIS under the Purchase Program Agreement as part of those certain securitizations.

WHEREFORE, Counterclaim Plaintiffs, VIS Holdings Corp., SPES International Corp., George M. Scopetta, and John R. Scopetta demand a declaration of their rights and obligations with respect to Consumer Portfolio Services, Inc. And 71270 Corp. under the Purchase Program Agreement  and any other relief this Court deems just.

## COUNT III
## BREACH OF CONTRACT AGAINST SEAWEST

61.    Counterclaim Plaintiffs, VIS, SPES, George M. Scopetta, and John R. Scopetta, reallege paragraphs 1 through 60, as if fully restated herein.

62.    On or about April 16, 2002, VIS and SeaWest entered into a contract, the Purchase Program Agreement.  Subsequently, VIS and SeaWest amended, modified, and/or extended the Purchase Program Agreement.

63.    Pursuant to the Purchase Program Agreement, SeaWest agreed that: (a) it could not require VIS to repurchase Contracts that it had purchased from VIS under the Purchase Program Agreement after SeaWest had sold a Contract to any third party

20

entity; and (b) upon a sale of Contracts that it had purchased from VIS under the Purchase Program Agreement, VIS was entitled to a 10% profit participation in the Contracts.

64.     SeaWest breached the Purchase Program Agreement by first selling certain Contracts that that it had purchased from VIS under the Purchase Program Agreement to third party entities, particularly to Securitizations for which it also acted as servicer, and then (a) requiring VIS to repurchase such Contracts under the Purchase Program Agreement as if such Contracts had always belonged to SeaWest; and (b) failing to pay VIS its 10% profit participation that was due to VIS upon Seawest's sale of the Contracts to a third party entity.

65.     As a direct and proximate result of SeaWest's breaches of the Purchase Program Agreement, the Plaintiffs have been damaged.

**WHEREFORE**, Counterclaim Plaintiffs, VIS Holdings Corp., SPES International Corp., George M. Scopetta, and John R. Scopetta, demand judgment for damges against SeaWest Financial Corporation, and for such other relief this Court deems just.

## COUNT IV
## BREACH OF CONTRACT AGAINST CPS AND 71270

66.     Counterclaim Plaintiffs, VIS, SPES, George M. Scopetta, and John R. Scopetta, reallege paragraphs 1 through 65, as if fully restated herein.

67.     On or about April 16, 2002, VIS and SeaWest entered into a contract, the Purchase Program Agreement.  Subsequently, VIS and SeaWest amended, modified, and/or extended the Purchase Program Agreement.

68.    Pursuant to the Purchase Program Agreement, SeaWest agreed that: (a) it could not require VIS to repurchase Contracts that it had purchased from VIS under the Purchase Program Agreement after SeaWest had sold a Contract to any third party entity; and (b) upon a sale of  Contracts that it had purchased from VIS under the Purchase Program Agreement , VIS was entitled to a 10% profit participation in the Contracts.

69.    SeaWest breached the Purchase Program Agreement by first selling certain Contracts that that it had purchased from VIS under the Purchase Program Agreement to third party entities, particularly to Securitizations for which it also acted as servicer, and then (a) requiring VIS to repurchase such Contracts under the Purchase Program Agreement as if such Contracts had always belonged to SeaWest; and (b) failing to pay VIS its 10% profit participation that was due to VIS upon Seawest's sale of the Contracts to a third party entity.

70.    As a direct and proximate result of SeaWest's breaches of the Purchase Program Agreement, the Plaintiffs have been damaged.

71.    CPS and 71270 are the successors-in-interest to SeaWest under the Purchase Program Agreement and are jointly and severally liable for SeaWest's breaches of the Purchase Program Agreement.

**WHEREFORE**, Counterclaim Plaintiffs, VIS Holdings Corp., SPES International Corp., George M. Scopetta, and John R. Scopetta, demand judgment for damges against Consumer Portfolio Services, Inc. and 71270 Corp., as successors-in-interest to SeaWest Financial Corporation, and for such other relief this Court deems just.

Respectfully submitted,

/s/ Thomas W. Hill
Thomas W. Hill          (0012182)
Jennifer L. Mackanos     (0075059)
KEGLER, BROWN, HILL & RITTER,
A Legal Professional Assocation
65 E. State Street, Suite 1800
Columbus, Ohio 43215
Phone: 614-462-5403
Fax: 614-464-2634

OF COUNSEL:

Michael S. Budwick
Jonathan K. Winer
MELAND RUSSIN & BUDWICK, P.A.
3000 Wachovia Financial Center
200 S. Biscayne Blvd.
Miami, FL 33131
Phone: 305-358-6363
Fax: 305-358-1221

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served in

accordance with the Court's electronic filing procedures this 3rd day of May, 2006 upon:

Barbara Friedman Yuaksic
25550 Chagrin Blvd., Suite 406
Cleveland, Ohio 44122-4640

Thomas A. Roberts
Anthony Rollo
643 Magazine Street
New Orleans, Louisiana 70130

Frances Floriano Goins
Max W. Thomas
Ulmer & Berne, LLP
1300 E. Ninth Street, Suite 900
Cleveland, OH 44114-1583

/s/ Thomas W. Hill

# EXHIBIT "B"

From:  Jonathan K. Winer
Sent:  Tue 12/19/2006 03:15 PM
Rcvd:  Tue 12/19/2006 03:15 PM
To:  Max W. Thomas (mthomas@ulmer.com); James S. Wertheim
(jwertheim@mcglinchey.com)
CC:  Michael Budwick (Mbudwick); Jorge A. Astorga (Jastorga); Mackanos, Jennifer
(JMackanos@keglerbrown.com)
Subject:  VIS/CPS/SeaWest

====================================

Gentlemen:

This shall confirm the topics that we discussed and agreements reached during our conference
call earlier this afternoon:

The parties shall be filing a Joint Agreed Motion with the Court seeking the following relief,
which Max agreed to prepare:

1.  Extension of fact discovery cutoff to February 28, 2007, subject to the VIS Defendants' right
to redepose any of Plaintiffs' or SeaWest's witnesses to the extent necessary after such date,
regarding factual assumptions or representations contained in rebuttal expert reports filed by
Plaintiffs or SeaWest.
2.  Rebuttal expert witness reports due by March 31, 2007.
3.  Expert witness discovery closes April 30, 2007.  The Motion should state that the Court's
Order (D.E.#80) requiring this case to be available for final pretrial conference in May 2007, or
as soon thereafter as the Court's calender permits, will not be affected by our Motion.
4.  Plaintiffs agree to grant VIS and SPES an enlargement of time within which to respond to
Plaintiffs' Motion for Partial Summary Judgment until two weeks following the conclusion
of VIS' and SPES' depositions of the Plaintiffs' representatives.

We also discussed the following matters:

5.  The VIS Defendants requested to depose Plaintiffs' 30(b)(6) or other named representatives
during the weeks of January 29th, 2007 or February 5th, 2007.  Jim stated that he needed to
speak with his clients and advise availability.  Regardless, Jim and I agreed that the depositions
scheduled by the VIS Defendants for this Friday, Dec. 22nd and Tuesday, Dec. 26th are
cancelled.
6. The VIS Defendants agreed to produce VIS, SPES, George M. Scopetta, and John R. Scopetta
at mutually agreed dates before February 28, 2006. We will, as a courtesy, attempt to coordinate
the depositions of August Horvath and Esther Walker, with clarification that this firm does
not represent Mr. Horvath or Ms. Walker.  However, having said that, we are virtually certain
that we can coordinate their deposition dates. Max and I agreed that the depositions set by
SeaWest of such parties this month are all cancelled, to be rescheduled at mutually agreeable

dates on or before February 28, 2007.

7. Max stated that he will speak with his client regarding the VIS Defendants' desire to depose the 30(b)(6) representatives (via Rule 45 subpoenas) of SeaWest Receiveables Corp. I, SeaWest Funding Corp., and the Three Securitizations (SeaWest Securitization I, LLC, SeaWest Securitization 2002-A, LLC, and SeaWest Securitization 2003-A, LLC, and he will advise if he can accept service of process and coordinate the deposition dates for these entities. Having said that, Max understands that the entire purpose of working with each other in a cooperative manner is to avoid introducing more noncooperating nonparties into the situation. We expect that our offer to coordinate SeaWest's depositions of Mr. Horvath and Ms. Walker will be reciprocated by Max's coordination, if not representation, of our depositions of the five additional SeaWest entities.

8. The VIS Defendants announced their intention to take the depositions of nonparties: PNC Bank, WestLB AG, Squire Sanders & Dempsey, and Sheppard Mullin Richter and Hampton, all at mutually agreeable dates on or before February 28th.

9. SeaWest announced its intention to take the deposition of Ocean Bank and the Receiver, Tom Bastian, at mutually agreeable dates before February 28th.

10. The deposition of Kenneth Terkel remains scheduled on Jan. 11th, 2007.

11. We are trying to schedule the deposition of Frederick Cooper on Jan. 18th, 2007, but if we cannot do so on that date than we will need to coordinate a mutually agreeable date during week of our depositions of Plaintiffs in California, which will be scheduled after Jim speaks with his clients.

Should any of the foregoing matters not comport with our conversation, please notify us immediately. Otherwise, we shall act in accordance with the foregoing. Thank you.

**Jonathan K. Winer**
**Attorney At Law**

Ph: 305.358.6363 Fax: 305.358.1221 mail to:jwiner@melandrussin.com

 

3000 Wachovia Financial Center
200 South Biscayne Blvd.
Miami, FL 33131

TREASURY DEPARTMENT CIRCULAR 230 DISCLAIMER: To ensure compliance with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including any attachments, is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Service. (The foregoing statement is made in accordance with Circular 230, 31 C.F.R. Part 10.)

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@melandrussin.com

# EXHIBIT "C"

From:  Thomas, Max (mthomas@ulmer.com)
Sent:  Thu 12/21/2006 10:05 AM
Rcvd:  Thu 12/21/2006 10:05 AM
To:  Jonathan K. Winer (JWINER); jwertheim@mcglinchey.com
CC:  Michael Budwick (MBUDWICK); Jorge A. Astorga (JASTORGA); Mackanos, Jennifer
(JMackanos@keglerbrown.com); thill@keglerbrown.com; troberts@mcglinchey.com; Goins,
Frances (fgoins@ulmer.com)
Subject:  RE: VIS/CPS/SeaWest

========================================================

Dear Counsel:  My comments regarding Jonathan's summary email and following additional investigation
are interlineated below.  In addition, attached is a draft Motion to Extend Deadlines (to which we may have
a couple additional tweaks).

Thank you,
Max


--------------------
Max W. Thomas
Phone: (216) 583-7214
Cell: (216) 798-1116
--------------------


From: Jonathan K. Winer [mailto:jwiner@melandrussin.com]
Sent: Tuesday, December 19, 2006 3:16 PM
To: Thomas, Max; jwertheim@mcglinchey.com
Cc: Michael Budwick; Jorge A. Astorga; Mackanos, Jennifer
Subject: VIS/CPS/SeaWest

Gentlemen:

This shall confirm the topics that we discussed and agreements reached during our conference
call earlier this afternoon:

The parties shall be filing a Joint Agreed Motion with the Court seeking the following relief,
which Max agreed to prepare:

1. Extension of fact discovery cutoff to February 28, 2007, subject to the VIS Defendants' right
to redepose any of Plaintiffs' or SeaWest's witnesses to the extent necessary after such date,
regarding factual assumptions or representations contained in rebuttal expert reports filed by
Plaintiffs or SeaWest.

**SeaWest cannot agree to the condition to this discovery cut-off, which is in effect an attempt to get two bites at certain witnesses, as I indicated during our conversation. Any statement made by an expert, and any documents or facts relied upon by an expert, are subject to interrogation at the expert's deposition, and are not independent testimony for which any deposition is required. Further, it is a condition no court would agree to, for the same reasons expert discovery should take place after fact discovery in general. Therefore, we can agree to the schedule of dates we proposed, but not with this condition.**

2. Rebuttal expert witness reports due by March 31, 2007.
3. Expert witness discovery closes April 30, 2007. The Motion should state that the Court's Order (D.E.#80) requiring this case to be available for final pretrial conference in May 2007, or as soon thereafter as the Court's calender permits, will not be affected by our Motion.
4. Plaintiffs agree to grant VIS and SPES an enlargement of time within which to respond to Plaintiffs' Motion for Partial Summary Judgment until two weeks following the conclusion of VIS' and SPES' depositions of the Plaintiffs' representatives.

We also discussed the following matters:

5. The VIS Defendants requested to depose Plaintiffs' 30(b)(6) or other named representatives during the weeks of January 29th, 2007 or February 5th, 2007. Jim stated that he needed to speak with his clients and advise availability. Regardless, Jim and I agreed that the depositions scheduled by the VIS Defendants for this Friday, Dec. 22nd and Tuesday, Dec. 26th are cancelled.
6. The VIS Defendants agreed to produce VIS, SPES, George M. Scopetta, and John R. Scopetta at mutually agreed dates before February 28, 2006. We will, as a courtesy, attempt to coordinate the depositions of August Horvath and Esther Walker, with clarification that this firm does not represent Mr. Horvath or Ms. Walker. However, having said that, we are virtually certain that we can coordinate their deposition dates. Max and I agreed that the depositions set by SeaWest of such parties this month are all cancelled, to be rescheduled at mutually agreeable dates on or before February 28, 2007.

**Based upon our discussion and your email, I take this as confirmation that you have agreed to accept the Rule 45 subpoenas served by SeaWest for Mr. Horvath and Ms. Walker.**

**Although my notes do not reflect specifically agreeing to cancel the depositions SeaWest noticed/subpoenaed for the end of this month, including VIS, SPES, George M. Scopetta, John R. Scopetta, Mr. Horvath and Ms. Walker, SeaWest will stipulate to this agreement now, subject to a global agreement on the other points herein.**

**Thus, we will plan to take all of these depositions by mutual arrangement on or before February 28, 2007. We are currently inquiring as to available dates, and will look forward to receiving dates from you upon which each of these deponents will be noticed. Please also let us know where the deponents will be produced.**

7. Max stated that he will speak with his client regarding the VIS Defendants' desire to depose the 30(b)(6) representatives (via Rule 45 subpoenas) of SeaWest Receiveables Corp. I, SeaWest Funding Corp., and the Three Securitizations (SeaWest Securitization I, LLC, SeaWest Securitization 2002-A, LLC, and SeaWest Securitization 2003-A, LLC, and he will advise if he can accept service of process and coordinate the deposition dates for these entities. Having said that, Max understands that the entire purpose of working with each other in a cooperative manner is to avoid introducing more noncooperating nonparties into the situation. We expect that our offer to coordinate SeaWest's depositions of Mr. Horvath and Ms. Walker will be reciprocated by Max's coordination, if not representation, of our depositions of the five additional SeaWest entities.

**As I indicated in the conversation, we do not represent these entities. Nor, as I have confirmed with my client, do we control any persons who would be appropriate deponents for these entities. Any person we could present as a potential deponent would not be the person with most knowledge of the subjects at issue in this lawsuit. In fact, we believe that Messrs. Cooper and Terkel are to have the best information about for these entities. Nevertheless, we will continue to investigate whether we can assist you in coordinating a deponent(s) for these entities.**

8. The VIS Defendants announced their intention to take the depositions of nonparties: PNC Bank, WestLB AG, Squire Sanders & Dempsey, and Sheppard Mullin Richter and Hampton, all at mutually agreeable dates on or before February 28th.
9. SeaWest announced its intention to take the deposition of Ocean Bank and the Receiver, Tom Bastian, at mutually agreeable dates before February 28th.
10. The deposition of Kenneth Terkel remains scheduled on Jan. 11th, 2007.
11. We are trying to schedule the deposition of Frederick Cooper on Jan. 18th, 2007, but if we cannot do so on that date than we will need to coordinate a mutually agreeable date during week of our depositions of Plaintiffs in California, which will be scheduled after Jim speaks with his clients.

Should any of the foregoing matters not comport with our conversation, please notify us immediately. Otherwise, we shall act in accordance with the foregoing. Thank you.

_____
**Jonathan K. Winer**
**Attorney At Law**

Ph: 305.358.6363 Fax: 305.358.1221 mail to:jwiner@melandrussin.com

 

3000 Wachovia Financial Center
200 South Biscayne Blvd.
Miami, FL 33131

TREASURY DEPARTMENT CIRCULAR 230 DISCLAIMER: To ensure compliance with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including any attachments, is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Service. (The foregoing statement is made in accordance with Circular 230, 31 C.F.R. Part 10.)

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@melandrussin.com

# EXHIBIT "D"

** Replied to All on Thu 1/4/2007 03:02 PM **

From: Jonathan K. Winer
Sent: Thu 1/4/2007 03:01 PM
Rcvd: Thu 1/4/2007 03:01 PM
To: Max W. Thomas (mthomas@ulmer.com)
CC: Michael Budwick (Mbudwick)
Subject: VIS/CPS/SeaWest

========================================================

Max,

This shall confirm our telephone conversation a short while ago, during which we discussed the
following matters:

1.    We confirmed that the VIS Defendants will be noticing the taking of the depositions of
Levine Leichtman Capital Partners, L.P. ("LLCP")(per Rule 30(b)(6)), Levine Leichtman Capital
Partners II, L.P. ("LLCP II")(per Rule 30(b)(6)), Arthur Levine, as Officer, Director or Managing
Agent of LLCP and LLCP II, and Lauren Leichtman, as Officer, Director or Managing Agent of
LLCP and LLCP II for Tuesday, January 16th and Wednesday, January 17th. We agreed that the
VIS Defendants need not specify which person/entity will be deposed on which date and time,
and that the scheduled dates would be allotted as needed for these four depositions.

2.    We confirmed that the the VIS Defendants will be noticing the taking of the deposition
of SeaWest Financial Corp. ("SeaWest")(per Rule 30(b)(6)) for Friday, January 19th. I notified
you that we believe it is quite possible that the VIS Defendants will be unable to complete the
taking of SeaWest's deposition on January 19th and I inquired whether SeaWest would be
available on Monday, January 22nd, to continue the taking of its deposition, if necessary. You
stated that you did not know, but would check with your client and/or Ms. Goins.

3.    You inquired into the availability of our clients, VIS Holdings Corp., SPES Int'l Corp.,
George Scopetta and John R. (Jack) Scopetta, and third party witnesses (former VIS employees)
August Horvath and Esther Walker for deposition on the following dates: Feb. 21-23, 26-27.
Although we neither represent Mr. Horvath nor Ms. Walker, we will, as a courtesy, inquire with
them whether they and our clients are available on those dates.

4.    You stated that you would confirm for us whether or not you and your firm are authorized to
accept service of process relating to the VIS Defendants' intent to take the depositions of the
following entities: SeaWest Securitization I, LLC, SeaWest Securitization 2002-A, LLC,
SeaWest Securitization 2003-A, LLC, SeaWest Funding Corp., and SeaWest Receivables Corp.
I, and if you are authorized to accept service of process, you would inquire into the availability of
such entities for deposition.

Should any of the foregoing not comport with our conversation, please contact me immediately. Otherwise, we shall proceed in accordance with the foregoing.

**Jonathan K. Winer**
**Attorney At Law**

Ph: 305.358.6363 Fax: 305.358.1221 mail to:jwiner@melandrussin.com

 

3000 Wachovia Financial Center
200 South Biscayne Blvd.
Miami, FL 33131

TREASURY DEPARTMENT CIRCULAR 230 DISCLAIMER: To ensure compliance with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including any attachments, is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Service. (The foregoing statement is made in accordance with Circular 230, 31 C.F.R. Part 10.)

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@melandrussin.com

# EXHIBIT "E"

From: Jonathan K. Winer
Sent: Wed 1/10/2007 02:35 PM
Rcvd: Wed 1/10/2007 02:35 PM
To: Max W. Thomas (mthomas@ulmer.com)
CC: Michael Budwick (Mbudwick)
BCC: Peter Russin (Prussin)
Subject: VIS/CPS/SeaWest

========================================================

Max,

This shall confirm our telephone conversation earlier today during which we discussed the following matters:

1.    You confirmed that you and your firm are authorized to accept service of process relating to the VIS Defendants' intent to take the depositions of the following entities: SeaWest Securitization I, LLC, SeaWest Securitization 2002-A, LLC, SeaWest Securitization 2003-A, LLC, SeaWest Funding Corp., and SeaWest Receivables Corp. I, and that you and your office would act to coordinate the scheduling of the depositions of these entities. Having said that, you clarified that you and your firm do not represent these entities, but would accept service and coordinate scheduling of their depositions for the sake of the convenience of the parties. When I inquired into available dates for the depositions of these five entities, you stated that you did not yet have any dates, but were working on getting dates, and expected to provide available dates to us within the next two weeks.

2.    On December 21, 2006, you issued a Subpoena out of the U.S. District Court for the Southern District of Florida directed to Ocean Bank requesting production of certain documents. I notified you that the VIS Defendants find some, if not all, of the document requests objectionable on various grounds. We are scheduled to have a telephone call tomorrow at 1:30 p.m. to attempt a consensual resolution to my clients' concerns regarding the Ocean Bank subpoena prior to litigating such issues.

3.    On December 21, 2006, you issued a Subpoena out of the U.S. District Court for the Northern District of Texas directed to Thomas A. Bastian, CPA, as Receiver for VIS Holdings Corp. requesting production of certain documents. We note that on its face, the Subpoena was issued out of the U.S. District Court for the Northern District of Texas, and as such, SeaWest has failed to acquire personal jurisdiction over the Receiver, and the Subpoena is readily subject to being quashed. Although we did not discuss this Subpoena during our call, please be advised that the VIS Defendants find some, if not all, of the document requests objectionable on various grounds. I suggest that we also discuss SeaWest's Subpoena on the Receiver during our call tomorrow at 1:30 p.m., in an attempt to confer and resolve any issues prior to litigation.

Should any of the foregoing not comport with our conversation, please contact me immediately. Otherwise, we shall proceed in accordance with the foregoing.

**Jonathan K. Winer**
**Attorney At Law**

Ph: 305.358.6363 Fax: 305.358.1221 mail to:jwiner@melandrussin.com

 

3000 Wachovia Financial Center
200 South Biscayne Blvd.
Miami, FL 33131

TREASURY DEPARTMENT CIRCULAR 230 DISCLAIMER: To ensure compliance with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including any attachments, is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Service. (The foregoing statement is made in accordance with Circular 230, 31 C.F.R. Part 10.)

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@melandrussin.com

# COMPOSITE

# EXHIBIT "F"

## AFFIDAVIT OF SERVICE

## UNITED STATES DISTRICT COURT
### District of DELAWARE

Case Number: 2:04-CV-614

Plaintiff:
**CONSUMER PORTFOLIO SERVICES INC AND 71270 CORP**
vs.
Defendant:
**VIS HOLDINGS CORP. SPES INTERNATIONAL CORP. GEORGE M SCOPETTA AND JOHN R SCOPETTA**

For: Jonathan Winer
MELAND RUSSIN & BUDWICK PA

Received by P.I. SERVICES on the 26th day of January, 2007 at 4:08 pm to be served on **SEAWEST FUNDING CORP., 1209 ORANGE STREET, WILMINGTON, DE 19801.** I, ____Daniel____ ____Newcomb____ , being duly sworn, depose and say that on the __29__ day of __January__ , 20 07 at _2 :45_ P.m., executed service by delivering a true copy of the **SUBPOENA FOR DEPOSITION IN A CIVIL CASE** in accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as _____ of the within-named agency.

( ) SUBSTITUTE SERVICE: By serving _____ as _____

(X) CORPORATE SERVICE: By serving ___Scott LaScala___ as _____
__Managing Agent duly authorized to accept service__ .

( ) OTHER SERVICE: As described in the Comments below by serving _____ as _____

( ) NON SERVICE: For the reason detailed in the Comments below.

**COMMENTS:** _____
_____
_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the __30__ day of __January__ , 2007 by the affiant who is personally known to me.

NOTARY PUBLIC KIMBERLY RYAN
NOTARY PUBLIC-DELAWARE
My Commission Expires June 15, 2009

PROCESS SERVER # _Daniel Newcomb_ (No #s in DE)
Appointed in accordance
  with State Statutes

**P.I. SERVICES**
**1550 South Dixie Highway**
**Suite 206a**
**Coral Gables, FL 33146**
**(305) 666-0142**
**Our Job Serial Number: 2007002071**

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.5j

## AFFIDAVIT OF SERVICE

## UNITED STATES DISTRICT COURT
### District of DELAWARE

Case Number: 2:04-CV-614

Plaintiff:
**CONSUMER PORTFOLIO SERVICES INC AND 71270 CORP**
vs.
Defendant:
**VIS HOLDINGS CORP. SPES INTERNATIONAL CORP. GEORGE M
SCOPETTA AND JOHN R SCOPETTA**

For: Jonathan Winer
MELAND RUSSIN & BUDWICK PA

Received by P.I. SERVICES on the 26th day of January, 2007 at 4:08 pm to be served on **SEAWEST
RECEIVABLES CORP. I, 1209 ORANGE STREET, WILMINGTON, DE 19801.** I, _Daniel
Newcomb_, being duly sworn, depose and say that on the _29_ day of _January_, 20_07_ at
_2 :45_ p.m., executed service by delivering a true copy of the **SUBPOENA FOR DEPOSITION IN A CIVIL CASE** in
accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as _____ of
the within-named agency.

( ) SUBSTITUTE SERVICE: By serving _____ as
_____

(X) CORPORATE SERVICE: By serving _Scott LaScala_ as
_Managing Agent duly authorized to accept service_.

( ) OTHER SERVICE: As described in the Comments below by serving _____ as
_____

( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS: _____
_____
_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in
which this service was made.

Subscribed and Sworn to before me on the _30_ day
of _January_, _2007_ by the affiant who is
personally known to me.

_____
NOTARY PUBLIC
KIMBERLY J. RYAN
NOTARY PUBLIC-DELAWARE
My Commission Expires June 15, 2007

PROCESS SERVER # _Daniel Newcomb_ (No #s in DE)
Appointed in accordance
with State Statutes

**P.I. SERVICES
1550 South Dixie Highway
Suite 206a
Coral Gables, FL 33146
(305) 666-0142**
Our Job Serial Number: 2007002072

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.5j

FEB-07-2007  01:15PM  FROM-PISERVICES          +3056663823          T-302  P.004/006  F-276

# AFFIDAVIT OF SERVICE

## UNITED STATES DISTRICT COURT
### District of DELAWARE

Case Number: 2:04-CV-614

Plaintiff:
**CONSUMER PORTFOLIO SERVICES INC AND 71270 CORP**
vs.
Defendant:
**VIS HOLDINGS CORP. SPES INTERNATIONAL CORP. GEORGE M SCOPETTA AND JOHN R SCOPETTA**

For: Jonathan Winer
    MELAND RUSSIN & BUDWICK PA

Received by P.I. SERVICES on the 26th day of January, 2007 at 4:08 pm to be served on **SEAWEST SECURITIZATION I, LLC, 1209 ORANGE STREET, WILMINGTON, DE 19801**. I, Daniel Newcomb____, being duly sworn, depose and say that on the 29 day of January, 20 07 at 2:45 p.m., executed service by delivering a true copy of the **SUBPOENA FOR DEPOSITION IN A CIVIL CASE** in accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as _____ of the within-named agency.

( ) SUBSTITUTE SERVICE: By serving _____ as _____

(X) CORPORATE SERVICE: By serving ___Scott LaScala___ as _____
    ___Managing Agent duly authorized to accept service___.

( ) OTHER SERVICE: As described in the Comments below by serving _____ as _____

( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS: _____
_____
_____
_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the 30 day
of January , 2007 by the affiant who is
personally known to me.

NOTARY PUBLIC

**KIMBERLY J. RYAN**
**NOTARY PUBLIC-DELAWARE**
My Commission Expires June 15, 2008

PROCESS SERVER # Daniel Newcomb (No #s in DE)
Appointed in accordance
  with State Statutes

**P.I. SERVICES**
**1550 South Dixie Highway**
**Suite 206a**
**Coral Gables, FL 33146**
**(305) 666-0142**
Our Job Serial Number: 2007002074

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.5j

FEB-07-2007 01:16PM   FROM-PISERVICES                    +3056663923           T-302   P.005/006   F-276

# AFFIDAVIT OF SERVICE

## UNITED STATES DISTRICT COURT
### District of DELAWARE

Case Number: 2:04-CV-614

Plaintiff:
**CONSUMER PORTFOLIO SERVICES INC AND 71270 CORP**
vs.
Defendant:
**VIS HOLDINGS CORP. SPES INTERNATIONAL CORP. GEORGE M
SCOPETTA AND JOHN R SCOPETTA**

For: Jonathan Winer
    MELAND RUSSIN & BUDWICK PA

Received by P.I. SERVICES on the 26th day of January, 2007 at 4:08 pm to be served on **SEAWEST
SECURITIZATION 2002-A, LLC, 1209 ORANGE STREET, WILMINGTON, DE 19801**. I, __Daniel__
__Newcomb__, being duly sworn, depose and say that on the __29__ day of __January__, 20 __07__ at
__2__ : __45__ pm., executed service by delivering a true copy of the **SUBPOENA FOR DEPOSITION IN A CIVIL CASE** in
accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as _____ of
the within-named agency.

( ) SUBSTITUTE SERVICE: By serving _____ as
_____ .

(X) CORPORATE SERVICE: By serving __Scott LaScala__ as
__Managing Agent duly authorized to accept service__ .

( ) OTHER SERVICE: As described in the Comments below by serving _____ as
_____ .

( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS: _____
_____
_____
_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in
which this service was made.

Subscribed and Sworn to before me on the __30__ day
of __January__ , __2007__ by the affiant who is
personally known to me.

NOTARY PUBLIC KIMBERLY J RYAN
NOTARY PUBLIC-DELAWARE
My Commission Expires June 15, 2009

Daniel Newcomb (No #s in DE)

PROCESS SERVER # _____
Appointed in accordance
  with State Statutes

**P.I. SERVICES**
**1550 South Dixie Highway**
**Suite 206a**
**Coral Gables, FL 33146**
**(305) 666-0142**
Our Job Serial Number: 2007002073

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.6j

FEB-07-2007  01:15PM  FROM-PISERVICES                    +3056663823          T-302  P.003/006  F-276

## AFFIDAVIT OF SERVICE

## UNITED STATES DISTRICT COURT
### District of DELAWARE

Case Number: 2:04-CV-614

Plaintiff:
**CONSUMER PORTFOLIO SERVICES INC AND 71270 CORP**
vs.
Defendant:
**VIS HOLDINGS CORP. SPES INTERNATIONAL CORP. GEORGE M
SCOPETTA AND JOHN R SCOPETTA**

For: Jonathan Winer
      MELAND RUSSIN & BUDWICK PA

Received by P.I. SERVICES on the 26th day of January, 2007 at 4:08 pm to be served on **SEAWEST
SECURITIZATION 2003-A LLC, 1209 ORANGE STREET, WILMINGTON, DE 19801**. I, _Daniel_
_Newcomb_____, being duly sworn, depose and say that on the ___29___ day of _January_____, 20 _07_ at
_2_ :_45_ p.m., executed service by delivering a true copy of the **SUBPOENA FOR DEPOSITION IN A CIVIL CASE** in
accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as _____ of
the within-named agency.

( ) SUBSTITUTE SERVICE: By serving _____ as
_____.

(X) CORPORATE SERVICE: By serving ___Scott LaScala_____ as
_Managing Agent duly authorized to accept service_____.

( ) OTHER SERVICE: As described in the Comments below by serving _____ as
_____.

( ) NON SERVICE: For the reason detailed in the Comments below.

**COMMENTS:** _____
_____
_____
_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in
which this service was made.

Subscribed and Sworn to before me on the __30__ day
of _January_____, 2007 by the affiant who is
personally known to me.

NOTARY PUBLIC

KIMBERLY J. RYAN
NOTARY PUBLIC-DELAWARE
My Commission Expires June 15, 2008

PROCESS SERVER # _Daniel Newcomb_ (No #s in DE)
Appointed in accordance
  with State Statutes

**P.I. SERVICES**
**1550 South Dixie Highway**
**Suite 206a**
**Coral Gables, FL  33146**
**(305) 666-0142**
Our Job Serial Number: 2007002070

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.5j

# EXHIBIT "G"

** Replied to All on Tue 2/6/2007 04:02 PM **

From: Thomas, Max (mthomas@ulmer.com)
Sent: Tue 2/6/2007 03:51 PM
Rcvd: Tue 2/6/2007 03:51 PM
To: Jonathan K. Winer (JWINER)
CC: Michael Budwick (MBUDWICK); thill@keglerbrown.com; Mackanos, Jennifer
(JMackanos@keglerbrown.com); jwertheim@mcglinchey.com; troberts@mcglinchey.com;
Goins, Frances (fgoins@ulmer.com)
Subject: RE: Motion to Quash

======================================================

Jonathan: the entities to which you refer have not been duly subpoenaed to appear for deposition,
because a Delaware court cannot compel the appearance of an entity located elsewhere.  Please refer to
the cases cited in our Motion to Quash.  Obviously, if you have contrary authority, we will be pleased to
review it.

Since the subpoenas are improper, the SeaWest entities will not appear on February 7 and 8.

Max


--------------------
Max W. Thomas
Phone: (216) 583-7214
Cell: (216) 798-1116
--------------------



From: Jonathan K. Winer [mailto:jwiner@melandrussin.com]
Sent: Tuesday, February 06, 2007 3:09 PM
To: Thomas, Max
Cc: Michael Budwick; thill@keglerbrown.com; Mackanos, Jennifer; jwertheim@mcglinchey.com;
troberts@mcglinchey.com; Goins, Frances
Subject: RE: Motion to Quash

Max,

We are in receipt of the Motion to Quash Subpoenas filed by your firm on behalf of your firm's
new clients, SeaWest Funding Corp., SeaWest Receivables Corp. I, SeaWest Securitization I,
LLC, SeaWest Securitization 2002-A, LLC, and SeaWest Securitization 2003-A, LLC
(collectively, the "SeaWest Affiliates").  This shall confirm the statements that you made to
Michael Budwick and I during several telephone conversations, which statements are

corroborated by the SeaWest Affiliates' filing of the Motion to Quash, that none of the SeaWest Affiliates shall be appearing for the depositions for which they have been duly subpoenad pursuant to Rule 45 on February 7 and 8, 2007. For the record, the VIS Defendants are not cancelling any of these depositions, but simply clarifying that the SeaWest Affiliates will not appearing for the depositions set forth in the Subpoenas.

If the SeaWest Affiliates will be appearing for the depositions scheduled on February 7th and 8th by the VIS Defendants, please confirm this to us immediately. Otherwise, we shall act in accordance with the foregoing.

**Jonathan K. Winer**
**Attorney At Law**

Ph: 305.358.6363 Fax: 305.358.1221  mail to:jwiner@melandrussin.com

 

3000 Wachovia Financial Center
200 South Biscayne Blvd.
Miami, FL 33131

TREASURY DEPARTMENT CIRCULAR 230 DISCLAIMER: To ensure compliance with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including any attachments, is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Service. (The foregoing statement is made in accordance with Circular 230, 31 C.F.R. Part 10.)

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@melandrussin.com

**From:** Thomas, Max [mailto:mthomas@ulmer.com]
**Sent:** Monday, February 05, 2007 6:13 PM
**To:** Michael Budwick; Jonathan K. Winer; jwertheim@mcglinchey.com; troberts@mcglinchey.com; thill@keglerbrown.com; Mackanos, Jennifer
**Cc:** Goins, Frances
**Subject:** Motion to Quash

Dear Counsel:

Please see the attached correspondence and Motion to Quash.  Thank you.

--------------------
Max W. Thomas

Ulmer & Berne LLP

Skylight Office Tower
1660 West 2nd Street - Suite 1100
Cleveland, Ohio 44113-1448
Direct Phone: (216) 583-7214
Direct Fax: (216) 583-7215
Firm's Main Phone: (216) 583-7000
Firm's Main Fax: (216) 583-7001
Cell: (216) 798-1116
Email: mthomas@ulmer.com

ULMER & BERNE LLP - CONFIDENTIAL COMMUNICATION
This email and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom it is addressed. If you are not the intended recipient or the person responsible for delivering the email to the intended recipient, please be advised that you have received this email in error and that any use, dissemination, forwarding, printing, or copying of this email and any file attachments is strictly prohibited. If you have received this email in error, please immediately notify us by telephone at 1-800-837-8400 (or 216-583-7000) or by reply email to the sender. Please delete this email and its attachments from your system and do not retain any copies. You will be reimbursed for reasonable costs incurred in notifying us.